*In re* MARRIAGE OF SHARON WAECKERLE, Plaintiff-Appellant, and DAN WAECKERLE, Defendant-Appellee.

Fifth District   No. 5—90—0260

Opinion filed October 9, 1991.

Storment & Read, of Belleville, for appellant.

Margaret J. Walsh, of Wimmer, Stiehl & Montalvo, P.C., of Belleville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Petitioner, Sharon Waeckerle, appeals from orders entered by the circuit court of St. Clair County on January 19, 1990, and March 30, 1990, respectively. The court's order of January 19, 1990, provided, in pertinent part, that petitioner was entitled to 22% of the proceeds of respondent Dan Waeckerle's personal injury claim which was pending at the time the parties' judgment of dissolution of marriage was entered. Following consideration of petitioner's motion for rehearing, the circuit court found in its order of March 30, 1990, that the January 19, 1990, order should stand as the order of the court.

Sharon Waeckerle filed a petition for dissolution of marriage from Dan Waeckerle on August 21, 1986. A judgment of dissolution of marriage was entered by the circuit court on December 18, 1986, incorporating therein the parties' property settlement agreement of same date. The property settlement agreement provided *inter alia*:

> "The Wife shall be entitled to 22% of the net proceeds the Husband receives by way of settlement or otherwise from his claim now pending in the Circuit Court of Madison County, Illinois, against Alton & Southern Railroad in Cause No. 85—L—534. Net proceeds are those proceeds which remain after deduction of the attorney's fees and expenses incurred."

As of December 18, 1986, Dan Waeckerle had a Federal Employers' Liability Action (FELA) with the above-stated cause number pending in the Madison County circuit court against the Alton & Southern Railroad. According to his complaint filed on June 7, 1985, respondent's injuries were allegedly incurred on May 6, 1985, during his employment with said railroad.

Respondent was allegedly injured in a second, unrelated accident occurring during his employment with the Alton & Southern Railroad on February 20, 1987. A first amended complaint adding count II to cause number 85—L—534 seeking damages for personal injuries suffered as a result of this second accident was filed by respondent on July 28, 1987. A settlement was reached between the Alton & Southern Railroad and Dan Waeckerle on both counts of his complaint, as amended, on February 17, 1989, the terms of which were set forth in individual FELA statements of settlement and distribution. The net settlement for count I was $17,297.85 and the statement provided that 22% thereof, or $3,805.53, was to be paid to Sharon Waeckerle pursuant to the decree of divorce. The net settlement for count II was $169,328.47 and the statement provided that 22% thereof, or $34,727.13, should be held in escrow until resolution of the dispute

with regard to petitioner's right to 22% of the proceeds of the settlement of count II of his FELA complaint.

Dan Waeckerle filed a motion to enforce the judgment of dissolution of marriage with the circuit court of St. Clair County on May 11, 1989, joining the escrow agent, Jon Carlson, as a defendant therein. In respondent's motion he alleged that Sharon Waeckerle had refused to sign any releases with regard to the FELA action and he was thus prevented from receiving net proceeds from either count of the complaint. Respondent further alleged that petitioner was claiming entitlement to 22% of the net settlement from both counts of the FELA complaint and contended that under the property settlement agreement, Sharon Waeckerle was not entitled to any of the proceeds from count II because that part of the action was not pending as of the date of the judgment of dissolution of marriage. Respondent sought the following relief, pertinent to our consideration in this appeal, in his motion to enforce the judgment:

"A. For an order requiring Defendant, Jon G. Carlson[,] to release 22% of the net proceeds of the claim pending in Madison County on December 12, 1986, in accordance with the terms of the Judgment of Dissolution of Marriage.

B. For an order requiring Defendant, Jon G. Carlson[,] to release the remainder of the proceeds of both claims to Respondent, Dan Waeckerle.

C. For an order requiring Petitioner, Sharon Waeckerle[,] to execute a release after same has been paid as described hereinabove."

In this appeal we are asked to determine whether the circuit court of St. Clair County erred in not allowing Sharon Waeckerle a 22% share of the total net damage settlement Dan Waeckerle received from the Alton & Southern Railroad. We initially note that pursuant to the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1989, ch. 40, par. 101 *et seq.*), "marital property" means all property acquired by either spouse subsequent to the marriage with the exception of certain property which is statutorily considered to be "nonmarital property," none of the exceptions of which is pertinent to the issue before us on review. (See Ill. Rev. Stat. 1989, ch. 40, par. 503(a).) This section of the Illinois Marriage and Dissolution of Marriage Act also creates a presumption of marital property for all property acquired by either spouse after the marriage and before a judgment of dissolution of marriage. Ill. Rev. Stat. 1989, ch. 40, par. 503(b).

Sharon Waeckerle contends that under a proper interpretation of the property settlement agreement she is entitled to her 22% share of the entire FELA settlement irrespective of whether the case against the railroad was amended to include the accident which occurred after entry of the judgment of dissolution of marriage. In the alternative, petitioner argues that because the two injuries which together caused respondent's permanent back injury were so interconnected, it was impossible to divide the monetary recovery according to the injury received in the first accident from the injury received in the second accident; therefore, she is entitled to 22% of the entire recovery.

Petitioner argues in support of her first contention that a plain reading of the property settlement agreement evidences an intent that she share in the entire FELA settlement because Madison County cause number 85—L—534 was, as a matter of record, a case encompassing both FELA causes of action. We note that the record indicates that Dan Waeckerle's first FELA injury was a soft tissue back strain in the L5—S1 region that was incurred when respondent was using a pry bar in an attempt to straighten and adjust a load of metal racks located on a flatcar. Respondent was injured in that accident in May 1985 and was temporarily disabled from returning to work until September 1985. The record indicates that respondent's second FELA injury, which was incurred in February 1987, involved an aggravation of the preexisting back injury and was caused when Waeckerle drove a vehicle over exposed rail at an unposted rail crossing. This second injury resulted in his permanent disability from returning to railroad work. Respondent also suffered from a developmental defect in the neural arch of the L5 level of his spine which preexisted any trauma to respondent's back. This condition, known as spondylolysis, which is generally asymptomatic, can indicate a predisposition for injury in the area of the defect. The record further indicates that respondent was involved in an automobile accident in August 1986 in which he injured his left knee cap and exhibited back pain in approximately the same location as the May 1985 injury.

■■ ■ With regard to the two injuries alleged in respondent's FELA complaint, we note that the negligent aggravation of a preexisting injury caused by another's negligence is a separate and distinct tort from the tort committed by the first wrongdoer, and injuries inflicted by each are separate and distinct injuries. (*Yanan v. Ewing* (1990), 205 Ill. App. 3d 96, 101, 562 N.E.2d 1243, 1246.) The cause of action set forth in count II of the FELA complaint was therefore a separate property right and nonmarital in nature since it arose following the entry of the judgment of dissolution. Moreover, section 502

of the Illinois Marriage and Dissolution of Marriage Act provides that parties to a dissolution of marriage proceeding may enter into agreements containing provisions for disposition of any property owned by either of them. (See Ill. Rev. Stat. 1989, ch. 40, par. 502(a).) The February 1987 cause of action could not have been in the contemplation of the parties when they entered into the December 18, 1986, property settlement agreement because the accident alleged in said count had not yet occurred. We therefore hold that the cause of action for the personal injuries claimed in count II of the FELA complaint which occurred after the judgment of dissolution of the parties' marriage was not marital property under section 503 of the Illinois Marriage and Dissolution of Marriage Act and could not properly have been considered part of the Waeckerles' property settlement agreement under the first theory espoused by petitioner.

We will next examine the record with regard to petitioner's alternate contention, that the injuries incurred by respondent in the two accidents were so interconnected that divisibility of damages would be impossible. Jon G. Carlson testified at the August 7, 1989, hearing on the motion to enforce the judgment that he was Dan Waeckerle's attorney in the FELA action against the Alton & Southern Railroad. He testified that following the second railroad injury he decided to amend the pending FELA action against the railroad and add a second count for the February 1987 injury rather than file a separate FELA action because he felt it would be a way of getting the second, more significant case to court sooner. He further testified that he had considered dismissing the original FELA complaint prior to trial, because he believed the case was "a loser" but determined that it should not be dismissed because of Sharon Waeckerle's interest in the proceeds of that claim. Carlson testified that the railroad made its offer of settlement during the *voir dire* stage of the trial. He testified that he was offered $25,000 for the first case, which he felt was "a gift." The FELA statements of settlement and distribution for both counts of respondent's FELA case were admitted into evidence.

Petitioner moved to strike Carlson's testimony because he had not brought the medical depositions taken in the FELA case with him to court and argued against consideration of Carlson's opinion as to the value of each case. Petitioner further implied that the settlement had been manipulated by respondent's FELA attorney so that Dan Waeckerle could realize the greatest amount of net proceeds possible. The court ruled that Carlson could testify as to his opinion as to the value of both FELA cases, and attorney Carlson further opined that in the second case respondent's contributory negligence would have been as-

sessed by a jury at zero while in the first case he may have been found to have been as much as 90% contributorily negligent. Respondent testified in rebuttal that he had never asked his attorney to manipulate the claims to prevent petitioner from getting her money. Respondent further stipulated at this hearing that the medical reports and depositions taken in his FELA case could be submitted into evidence with regard to the instant case. The court ordered that attorney Carlson should produce the medical reports and depositions taken in the FELA case and that at that time petitioner could follow up with further opinion evidence on the issue of the interconnection of the two injuries precluding a separate valuation thereof.

Following submission of the FELA medical reports and depositions by attorney Carlson to the parties, a hearing was set on January 12, 1990, to consider argument on the issue of the indivisibility of damages because of the interconnection of the two injuries. The court continued the hearing by *ex parte* order of January 12, 1990, based on motion of petitioner that her attorney was out of the country and unable to attend the hearing. Attorney for respondent moved to set aside this order of continuance, which motion was denied. However, by separate order of January 12, 1990, the court reset the cause for argument on January 19, 1990. Petitioner's attorney also failed to appear at the hearing on January 19, 1990. Based upon petitioner's memorandum of law submitted by respondent and respondent's rebuttal argument thereto, and the exhibits and testimony presented at the August 1989 hearing, the court entered its order of January 19, 1990, finding that petitioner was entitled to 22% of the FELA claim pending at the time the parties' judgment of dissolution was entered.

Petitioner filed a motion to set aside the January 19, 1990, order because of failure to receive notice that the hearing had been reset. This motion was heard on February 28, 1990, wherein petitioner argued in support of the indivisibility of damages issue that she should be permitted to submit certain medical depositions taken in respondent's FELA case to support her contention that it was a combination of all of the accidents that caused respondent's permanent back injury. The court treated the February 28, 1990, argument as petitioner's motion for rehearing and permitted submission, as exhibits, of the evidence and discovery depositions of Dr. George Schoedinger and the discovery depositions of Dr. Barbara Beuckman, Dr. Max Goldenberg, Dr. Lawrence Bauer, and Dr. Marlou Davis. Petitioner also submitted as exhibits the parties' judgment of dissolution and the original and amended FELA complaints. Respondent also submitted a medical report prepared by Dr. Davis concerning respondent's condition in

February 1989 as a further exhibit for the court's consideration on this issue. The court took the matter under advisement and thereafter on March 30, 1990, ruled that the court's order of January 19, 1990, should stand as the order of the court.

Our independent review of the depositions taken of respondent's examining and treating physicians in the FELA case indicates a consensus among these doctors that a soft tissue injury such as respondent experienced in May 1985 creates a weakened condition in the area of the injury rendering the patient extremely susceptible to reinjury in that area. It is further apparent from these depositions that both the August 1986 automobile accident and the February 1987 FELA injury aggravated the lumbar region injury experienced by respondent in May 1985. However, we cannot conclude that because the May 1985 injury initiated the weakness and susceptibility to reinjury in this area of respondent's back, it was impossible to divide the monetary recovery in the FELA case according to the FELA settlement entered into between respondent and the railroad.

We acknowledge that Dr. Schoedinger could not quantify the extent to which each FELA injury and the 1986 automobile accident had contributed to the resultant permanent disability from railroad work experienced by respondent following the February 1987 incident. However, Dr. Schoedinger also testified that the reason he could not make such an estimate was that he had not examined respondent following the earlier injuries. We note that respondent was able to return to railroad work in September 1985 following rehabilitation, after his May 1985 FELA injury. We also note that Dr. Goldenberg, who treated respondent following the initial FELA injury and whose deposition was taken two weeks prior to the February 20, 1987, FELA injury, rendered a favorable diagnosis at this deposition that respondent's injury would eventually resolve itself without any residual effects in approximately 1 to 1½ years. Moreover, Dr. Beuckman, respondent's treating chiropractic physician, stated that when she began treating respondent after his original injury she felt it was probable that he would be able to return to work but that after the February 1987 injury she had doubts that he would ever be able to do so. In addition, both Dr. Schoedinger and Dr. Davis noted the presence of pain in the neck and upper limbs following the February 1987 injury, and Dr. Schoedinger opined therefore that these complaints could only be attributable to the second FELA incident.

The depositions also indicate that prior to the February 20, 1987, injury Mr. Waeckerle was responding well to conservative treatment by his chiropractor. When respondent was not able to obtain relief

from pain with conservative treatment measures following the second FELA injury, respondent was referred to Dr. Schoedinger, who evaluated his condition in April 1987. Dr. Schoedinger diagnosed nerve root irritation on the left side at the L4 vertebral segment caused by a probable disc herniation at L4-5. At this time respondent had reported that his painful back symptoms had increased since the injury and were associated with sharp pain in his right lower limb and tingling sensations and radiating pain in his left upper limbs. Moreover, although respondent attempted to return to work for the railroad in a clerical position, he was forced to terminate his employment completely in October 1987 because the back pain and lower limb numbness had prevented him from being able to sit for any length of time. Dr. Schoedinger opined that his back injury was permanent and would require spinal fusion surgery when respondent could no longer tolerate the pain.

■ We note at this juncture that the allegation of two separate injuries to the same general portion of the anatomy, although it is difficult to establish the exact proportion of injury caused by each occurrence, entitles a plaintiff to an evaluation by a jury of his damages and the attribution of those damages caused by each defendant. (See *Wheeler v. Roselawn Memory Gardens* (1989), 188 Ill. App. 3d 193, 200-01, 543 N.E.2d 1328, 1333.) Therefore, if the amended FELA complaint had not been settled prior to jury verdict in Madison County cause number 85—L—534, the jury could have been required to assess liability and damages for each count of the complaint. (See *Yanan*, 205 Ill. App. 3d at 101, 562 N.E.2d at 1246.) The evidence before the court in the instant case was unrefuted that the Alton & Southern Railroad had offered to settle count I of the FELA complaint with respondent in the gross amount of $25,000 and count II of the FELA complaint in the gross amount of $259,540. The FELA statements of settlement and distribution for each count of the complaint, exhibiting the contract between respondent and the railroad, were admitted into evidence at the August 7, 1989, hearing on respondent's motion to enforce the judgment of dissolution. Attorney Carlson further opined at that hearing that the $25,000 offered in settlement of count I was more than a fair settlement of this cause of action based on his opinion of the value of the case and that if the case had gone to the jury, the jury could have found respondent 90% contributorily negligent. Respondent further testified that he had not asked attorney Carlson to manipulate the settlement amounts of the two FELA claims. Conspicuously absent in the record of either the August 7, 1989, hearing or the February 28, 1990, rehearing was any

testimony or evidence impeaching either Carlson's or respondent's testimony. If such impeaching evidence existed, petitioner could have conceivably subpoenaed witnesses from the Alton & Southern Railroad to testify that they were asked to manipulate the settlement such that count I was nominally settled for only $25,000. Petitioner did not, in our opinion, refute the inference that the actual value of respondent's claim in count I of his complaint was the settlement amount offered by the railroad. We find, therefore, that respondent's damages for the two FELA injuries were capable of apportionment and were so apportioned according to the FELA settlement statements. We hold that there was no error in the determination of the court in the instant case that petitioner was entitled to 22% of the net proceeds of count I, the claim pending at the time the parties' judgment of dissolution of marriage was entered.

Accordingly, the January 19, 1990, and March 30, 1990, orders of the circuit court of St. Clair County are affirmed.

Affirmed.

RARICK, P.J., and CHAPMAN, J., concur.